IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEREK J. DEGROOT,

                Plaintiff,             OPINION AND ORDER

v.

                                        21-cv-123-wmc

TONY EVERS, KEVIN CARR,
MARIO CANZIANI, and
JAMIE BARKER,

                Defendants.

---

*Pro se* plaintiff Derek J. DeGroot, currently incarcerated at Stanley Correctional Institution, has brought this lawsuit under 42 U.S.C. § 1983 alleging that defendants have violated his First and Fourteenth Amendment rights by requiring him to wear a mask and submit to testing for Covid-19 under threat of quarantine. Also before the court are DeGroot's motions for related preliminary injunctive relief. (Dkt. ##5, 11.) DeGroot's amended complaint is ready for screening as required by 28 U.S.C. §§ 1915(e)(2), 1915A.[1] For the following reasons, the court concludes that DeGroot's allegations fail to state a claim upon which relief can be granted. Accordingly, the court will deny without prejudice DeGroot's motions for preliminary relief, but will give him an opportunity to amend his complaint as outlined below.

---

[1] DeGroot has filed a motion for leave to file an amended complaint (dkt. #3) and a proposed amended complaint (dkt. #4). At this stage, Federal Rule of Civil Procedure 15(a) does not require DeGroot to seek leave of court to amend his complaint, so the motion will be granted. The court accepts the amended complaint as the operative pleading in this case. As for DeGroot's motion asking the court to screen his amended complaint (dkt. #12), the court has now done so and will therefore deny the motion as moot.

ALLEGATIONS OF FACT[2]

DeGroot is a Christian inmate at Stanley. Two of the named defendants also work there: Deputy Warden Mario Canziani and Health Services Unit ("HSU") Manager Jamie Barker. DeGroot also names as defendants Wisconsin Governor Tony Evers and Wisconsin Department of Corrections ("DOC") Secretary Kevin Carr.

In response to the ongoing Covid-19 pandemic, Canziani allegedly issued an order on July 2, 2020, mandating Covid-19 tests for all Stanley inmates. When DeGroot refused to comply, citing "his right to be free from forced medical testing," Barker allegedly ordered that DeGroot be quarantined -- a decision Canziani approved. (Dkt. #4 at 2.) Then, on July 13, 2020, Governor Evers issued an executive order requiring that masks be worn in all state buildings. For DeGroot, wearing a face covering would violate his Christian beliefs. Moreover, he argues in an attached memorandum that masks are ineffective at preventing the spread of Covid-19, and that the prison should instead promote vaccination, quarantine symptomatic inmates and treat them with antiviral medications, and house "vulnerable individuals" separately. (Dkt. #4 at 6-7.)

When DeGroot was released from quarantine after two weeks, he refused to wear a mask "because of his religious beliefs" and was allegedly quarantined again "within minutes." (*Id.*) DeGroot formally objected to the mask mandate, but Canziani upheld the conduct report DeGroot was issued for refusing to mask up, confirmed that DeGroot had

---

[2] These facts are drawn from the allegations in the amended complaint and attached memorandum, which the court must accept as true, *Bonte v. U.S Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), and construe generously, holding it to "a less stringent standard" than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

to wear a mask, and dismissed DeGroot's inmate grievance about the issue over DeGroot's assertion that "his religious freedom was being infringed." (Dkt. #4 at 2.) DeGroot alleges that Canziani's dismissal was affirmed on August 11, 2020, by nondefendant C. O'Donnell on behalf of Kevin Carr.

DeGroot has since continued to refuse Covid-19 tests. He again declined to be tested for Covid-19 on November 8, 2020, and Barker again allegedly ordered that DeGroot be quarantined. Similarly, when DeGroot signed a written refusal to be tested on January 11, 2021, Barker allegedly threatened to quarantine him while also promising DeGroot that if he consented to the test, he could still interact with others on his unit even if he tested positive. The complaint does not indicate whether DeGroot was quarantined again in November 2020 or January 2021, but DeGroot does attest in his renewed motion for injunctive relief that he was quarantined on May 3, 2021, after refusing Barker's renewed request to take a Covid-19 test. DeGroot alleges that Carr's office affirmed the dismissal of his grievance challenging mandatory Covid-19 testing on February 8, 2021. In this lawsuit, DeGroot asks for declaratory and injunctive relief, and any other relief the court deems just.

OPINION

Plaintiff alleges that by ordering him to wear a mask and be tested for Covid-19 under threat of quarantine, defendants violated his First Amendment free exercise rights, and his Fourteenth Amendment equal protection and substantive due process rights. In addition to those constitutional claims, the court will also address whether plaintiff has a stated a colorable statutory claim under the Religious Land Use and Institutionalized

3

Persons Act, 42 U.S.C. § 2000cc *et seq*. ("RLUIPA").

However, plaintiff's complaint must be dismissed without prejudice because his allegations fail to meet the minimal pleading requirements of Federal Rule of Civil Procedure 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief that is sufficient to provide the defendant with fair notice of the claim and its basis." *Ray v. City of Chicago*, 629 F.3d 660, 662 (7th Cir. 2018) (citations omitted). Additionally, the complaint must contain enough allegations of fact to support a claim under federal law. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

I. **Tony Evers and Kevin Carr**

As a threshold matter, plaintiff's allegations are insufficient to proceed against either Governor Tony Evers or DOC Secretary Kevin Carr. Beginning with Evers, who plaintiff is suing in his official capacity seeking injunctive relief, plaintiff takes issue with the governor's July 2020 mask mandate as violative of every citizen's constitutional rights. However, the Wisconsin Supreme Court struck the mandate down on March 31, 2021. *Fabrick v. Evers*, 2021 WI 28, ¶¶ 2-5, 396 Wis. 2d 231, 956 N.W.2d 856. Although local governments may impose their own restrictions, the Court held that the governor's authority to declare a state of emergency related to public health under Wis. Stat. § 323.10 is subject to a temporal limitation that Evers exceeded. *Id.* ¶ 44. Because "[a] court's power to grant injunctive relief only survives if such relief is actually needed," the Wisconsin Supreme Court's decision has rendered this issue moot. *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147,

4

1149-50 (7th Cir. 2019).

As for Carr, plaintiff's sole allegation is that a nondefendant administrator in Carr's office affirmed the dismissal of plaintiff's inmate grievances challenging mandated masking and Covid-19 testing at Stanley. But a defendant cannot be liable for the actions of other prison officials simply because he or she is a supervisor. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisory role of others). Rather, plaintiff must allege sufficient facts showing that Carr personally caused or participated in a constitutional deprivation to demonstrate liability under § 1983. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional violation") (citation omitted); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (to be liable, a supervisory defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). The complaint falls short in this respect -- it contains no specific allegations against Carr, so the court cannot infer that Carr was aware of plaintiff's grievances, imposed any mandate, or was otherwise personally involved in the alleged violations. Accordingly, Carr and Evers are subject to dismissal as an initial matter, leaving Stanley defendants Barker and Canziani.

## II. Substantive Due Process Claim

To begin, plaintiff alleges that Stanley's Covid-19 testing and masking protocols infringe on his Fourteenth Amendment substantive due process right to bodily autonomy -- specifically the right to refuse unwanted medical treatment. In general, "[s]ubstantive due process protects against only the most egregious and outrageous government action."

5

*Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019); *see also Catinella v. Cnty. of Cook, Ill.*, 881 F.3d 514, 519 (7th Cir. 2018) (explaining that the substantive component of the due-process guarantee is limited to conduct that "shocks the conscience"). Specifically, the Fourteenth Amendment's due process clause protects prisoners' liberty interest in refusing forced medical treatment while they are incarcerated. *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019) (citing *Washington v. Harper*, 494 U.S. 210, 221-22 (1990)). But that right is not absolute -- it must yield to a prison regulation reasonably related to legitimate penological interests, such as "when forced medication is needed to avoid the spread of contagious disease" in an institutional environment where close contact is inevitable. *Id.* at 343; *see also Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) (explaining that the Constitution allows for restraints on individuals, particularly in pursuit of the "common good"). That is in part because prison officials have a duty to ensure the health and safety of *all* inmates in their care, which can require the careful balancing of conflicting rights. *See Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994) (explaining that the Eighth Amendment imposes a duty on prison officials to ensure that "reasonable measures" are taken to guarantee inmate health and safety and prevent harm).

Setting aside the questions of whether Stanley's masking and testing protocols qualify as medical treatment or constitute the type of unwanted medical treatment that typically falls under the Fourteenth Amendment (*i.e.*, compulsory administration of antipsychotic drugs or of hydration and nutrition), the court would be hard-pressed to infer that such preventative measures, intended to save lives during an ongoing public health crisis that has claimed so many, amount to conduct so egregious or outrageous as to shock

6

the conscious. *See Firszt v. Bresnahan*, Case No. 21-cv-6798, 2022 WL 138141, at *2 (N.D. Ill. Jan. 14, 2022) (dismissing at screening plaintiff's substantive due process claim challenging the state's mask mandate in public schools for failure to plausibly allege that the mandate "is so egregious and outrageous as to shock the conscience"); *Forbes v. Cnty. of San Diego*, Case No. 20-cv-00998-bas-jlb, 2021 WL 843175, at *8 (S.D. Cal. Mar. 4, 2021) ("The Court also doubts that requiring people to wear a mask qualifies as 'medical treatment' within the meaning of the Due Process Clause"); *Parker v. Wolf*, 506 F. Supp. 3d 271, 291 n.20 (M.D. Pa. 2020) (state's mask mandate and tracing program, "at worst, [are] minor and fleeting inconveniences, especially when compared to the widespread infectiousness and death that Defendants credibly seek to avoid through these two orders"). Moreover, plaintiff does not allege to what extent he has been forced to mask up or that he has ever had to submit to testing over his objections -- indeed, he says he has declined to wear a mask and has repeatedly refused to be tested -- or that either protocol subjects him to any risk to his own health. Rather, he claims that he was periodically quarantined or threatened with quarantine when he chose not to take either course.

Regardless, this theory of liability runs squarely in the face of the Seventh Circuit's decision in *Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021). There, the Seventh Circuit denied plaintiffs an injunction against Indiana University's Covid-19 vaccination, masking, and testing requirements over the similar assertion that having to vaccinate against Covid-19 or alternatively wear a mask and be tested twice a week was a policy violative of their substantive due process rights. *Id.* at 593. In support, the court looked to the Supreme Court's longstanding decision in *Jacobson*, which sustained a

criminal conviction for refusing to be vaccinated against smallpox and holds that a state may require all members of the public to be vaccinated against that disease on penalty of fine or imprisonment. *Id*. If so, reasoned the Seventh Circuit, there could be no constitutional problem with requiring vaccination against Covid-19, and that having "to wear masks and be tested" in the alternative are not "constitutionally problematic" requirements either. *Id*. In sum, plaintiff cannot proceed on this claim. *Cf. Denis v. Ige*, Case No. cv-21-00011-som-rt, 2021 WL 3892657, at *9 (D. Haw. Aug. 31, 2021) (dismissing substantive due process claim challenging mask mandate because such mandates "do not violate fundamental rights"); *Onumonu v. Washington*, Case No. 1:21-cv-272, 2021 WL 2946495, at *4 (W.D. Mich. July 14, 2021) (dismissing prisoners' substantive due process claim challenging Covid-19 testing in a state prison where the state's effort to test all prisoners appeared reasonable in light of the ongoing pandemic and plaintiffs failed to allege any increased risk of death or risk to their own health posed by the testing).

### III. Equal Protection Claim

Plaintiff also invokes the Fourteenth Amendment's Equal Protection Clause but does not develop this claim beyond generally alleging that, "The State does not have a greater privilege that would permit it to deny equal protections to U.S. citizens on its property." (Dkt. #4 at 3.) More specifically, that clause states that "no state shall deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. Amend. XIV, "which is essentially a direction that all persons similarly situated should be treated alike[,]" *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

As pled, there are gaps in plaintiff's allegations that the court cannot reasonably fill even at this early stage. To establish a prima facie case of discrimination under the Fourteenth Amendment, a plaintiff must at least allege that he was: (1) "a member of a protected class"; (2) "otherwise similarly situated to members of the unprotected class"; and (3) "treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Here, plaintiff's religious beliefs are the basis for his objection to wearing a mask, but not also for refusing Covid-19 testing, leaving it somewhat unclear into which protected class plaintiff alleges he falls. Regardless, plaintiff does not identify a group of inmates that is treated differently despite being similarly situated. Nor does plaintiff allege any facts suggesting that he has been singled out from other noncompliant inmates. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing a class-of-one claim where a plaintiff alleges intentionally differential treatment from others similarly situated without a rational basis for the difference in treatment). Accordingly, the court cannot plausibly infer that defendants quarantined plaintiff in order to discriminate against him on account of race, religion, or national origin, and plaintiff's allegations, as currently pled, do not support an equal protection claim.

## IV. Religion Claims

Plaintiff further alleges that defendants violated his First Amendment free exercise rights when they quarantined him and issued him a conduct report for refusing to wear a mask in keeping with his Christian beliefs. Because these allegations also implicate RLUIPA, the court will consider that statute here as well. *Small v. Chao*, 398 F.3d 894,

898 (7th Cir. 2005) (*pro se* plaintiffs are generally not required to plead legal theories).

RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on a prisoner's religious exercise unless the burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)–(2). In applying this statute, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief and that his religious exercise was substantially burdened. *Holt v. Hobbs*, 574 U.S. 352, 361-362 (2015); *Koger v. Bryan*, 523 F.3d 789, 797-98 (7th Cir. 2008). If the plaintiff makes his required showing, the burden shifts to the defendant to demonstrate that its actions further a compelling governmental interest by the least restrictive means. *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005).

As for plaintiff's Free Exercise Clause claims, government regulations of general applicability -- not intended to discriminate against a particular religion or religious sect -- are usually permissible under the First Amendment. *Employment Division v. Smith*, 494 U.S. 872, 878-79 (1990). In the prison context, the Supreme Court and the Seventh Circuit Court of Appeals have applied pre-*Smith* precedent, which asks whether restrictions on the prisoner's exercise of religion are reasonably related to a legitimate penological interest. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019). The Seventh Circuit generally also requires the plaintiff to show that prison officials imposed a substantial burden on the prisoner's religious exercise. *See, e.g., Neely-Bey*, 912 F.3d at 1003. "A substantial burden 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Thomas v. Review Br.*, 450 U.S. 707, 718-18 (1981)); *see also Holt v. Hobbs*, 574 U.S. 352,

361 (2015) (defining "substantial burden" as something that "seriously violates [one's] religious beliefs," regardless of whether alternative means of religious exercise are available). In the prison context, such a burden is justified if it is "reasonably related to a legitimate penological interest." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

Again, there are gaps in plaintiff's allegations that prevent him from proceeding on a religion claim at this time. For purposes of screening, the court accepts that wearing a mask or similar face covering violates plaintiff's sincere Christian beliefs. However, plaintiff's allegations do not clarify whether or to what extent he has been forced to wear a mask over his religious objection, what pressure he has experienced to wear a mask beyond a conduct report and one presumably two-week period of quarantine in July 2020, or what deprivations he experienced while in quarantine or because of the report. Still, even if the court could plausibly infer that plaintiff has endured a substantial burden on the exercise of his faith under RLUIPA or the constitution, plaintiff has not also plausibly alleged how requiring prisoners to mask up is not rationally related to or the *least* restrictive means of furthering the state's undoubtedly "compelling interest" in "[s]temming the spread of COVID-19." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). Other courts have also expressed skepticism in allowing similar claims to proceed against Covid-19 mask mandates in various contexts. *See, e.g.*, *Firszt*, 2022 WL 138141, at *2-3 (dismissing parent's free exercise challenge to public school mask mandate); *Denis*, 2021 WL 1911884, at *8-10 (dismissing a protestor's free exercise challenge to state-wide mask mandate); *Zinman v. Nova Se. Univ., Inc.*, Case. No. 21-cv-60723-Ruiz/Strauss, 2021

11

WL 4025722, at *11-12, 19-20 (S.D. Fla. Aug. 30, 2021) (dismissing law student's RLUIPA and free exercise challenges to county and university masking mandates/policies).

Plaintiff therefore cannot proceed on these claims as currently pled.[3] Although the court has doubts as to whether any amendment will cure the deficiencies outlined above, the Seventh Circuit has cautioned against dismissing a *pro se* plaintiff's case without giving him the chance to amend the complaint. *See Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). Therefore, the court will give plaintiff a brief three-week window of time to submit a proposed amended complaint that corrects the deficiencies related to his proposed religion and equal protection claims and adds any new claims plaintiff has a good-faith basis to assert -- but plaintiff should omit his substantive due process claim. When drafting, plaintiff should include all of his factual allegations in his amended complaint, setting legal argument aside. *See Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (noting that complaints "initiate the litigation," and "legal arguments come later"). He should draft his amended complaint as if he were telling a story to someone who knows nothing about the events at hand, focusing on providing a timeline of the materials events, identifying the specific defendants who are being sued, and the specific actions taken by each defendant that plaintiff believes violated his rights. After the court receives plaintiff's proposed amended complaint in this lawsuit, the court will screen his amended complaint and determine whether this case may proceed further.

---

[3] Given that plaintiff's complaint does not contain sufficient allegations to state a violation of his constitutional rights or his statutory rights under RLUIPA, the court will deny his related motions for injunctive relief. (Dkt. ##5, 11.) If plaintiff still wishes to pursue injunctive relief based on current Wisconsin Department of Corrections masking and testing policies, he may file a renewed request with his amended complaint.

ORDER

IT IS ORDERED that:

1) Plaintiff Derek J. DeGroot's motion for leave to file an amended complaint (dkt. #3) is GRANTED.

2) Plaintiff's motion for a ruling on screening (dkt. #12) is DENIED as moot.

3) Plaintiff's motions for preliminary injunctive relief (dkt. ##5, 11) are DENIED without prejudice.

4) Plaintiff's amended complaint is DISMISSED without prejudice for failure to satisfy the requirements of Federal Rule of Civil Procedure 8. Plaintiff has until **April 12, 2022**, to file an amended complaint that corrects the deficiencies described above. Plaintiff's failure to file an amended complaint by that deadline will cause the court to dismiss his claims **with** prejudice for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b).

Entered this 22nd day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge